**MIDEAST SYSTEMS AND CHINA CIV-IL CONSTRUCTION SAIPAN JOINT VENTURE, INC., Appellant,**

v.

**Donald P. HODEL, Secretary of the Interior, Appellee.**

No. 84–5906.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 17, 1986.

Decided June 13, 1986.

Jerris Leonard, Washington, D.C., for appellant.

Michael J. Ryan, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before MIKVA and BORK, Circuit Judges, and GREENE,* District Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Appellant Mideast Systems and China Civil Construction ("Mideast") submitted

---

* The Honorable Harold H. Greene of the District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1982).

an unsuccessful bid to construct a hospital on the Commonwealth of the Northern Mariana Islands ("NMI"). The bid was rejected by NMI, the entity that constructed the hospital. Mideast, however, sued the grantor of the construction funds, the Secretary of the Department of the Interior ("DOI"). Appellant claims that the Department failed to follow the applicable regulations in administering the grant, and that therefore the award of the contracts to rival bidders was unlawful. The district court rejected the claim and granted summary judgment in favor of DOI.

Mideast claims that summary judgment was improper: it says that the district court failed to give appellant the benefit of all reasonable inferences, and that as a consequence the judge erroneously found that there are no genuine issues still in dispute. We conclude, however, that it is unnecessary to reach this issue, because even though appellant may have suffered an injury, it does not have standing to maintain its suit. An examination of the nexus between the allegedly illegal acts and the injury makes it clear that the harm to Mideast was not caused by DOI's conduct, and that this court is thus unable to afford any relief. We therefore remand the case with an order to dismiss for lack of standing.

### I.

In 1980, Congress authorized a $24 million expenditure to build a health care facility on Saipan, one of the Northern Mariana Islands. *See* Pub.L. No. 96–205 § 202, 94 Stat. 84, 86 (1980). The money was appropriated to the Department of the Interior, which in turn awarded the grant to the NMI territorial government. Even though NMI was responsible for the actual construction, DOI maintained general oversight responsibility for both the grant money and the project.

The administration of federal grants is regulated by the Office of Management and Budget, which has promulgated Circular A–102 (rev. ed. Jan. 1981), *Uniform Requirements for Assistance to State and Local Governments* ("Cir. A–102" or "the Circular"). The Circular applies to federal grants made to any state, territory, or possession of the United States. *Id.* at para. 7(b). Cir. A–102 provides, *inter alia,* that

> Grantees [NMI] shall maintain a written code or standards of conduct which shall govern the performance of their officers, employees or agents engaged in the award and administration of contracts supported by Federal funds. No employee, officer or agent of the grantee shall participate in selection, or in the award or administration of a contract supported by Federal funds if a conflict of interest, real or apparent, would be involved.

*Id.* at Attachment O, para. 7. The Circular also states that it is incumbent on DOI to review the grantee's procurement practices to ensure compliance with the terms of Cir. A–102. *Id.* at para. 4(a), (b).

After NMI and DOI executed the first grant agreement in February 1983, NMI entered into two construction service contracts with Turner International Industries ("Turner"). Turner was responsible for inviting construction bids, pre-qualifying bidders, evaluating the bids, and making recommendations to NMI, which then made the ultimate decision. Work on the hospital itself was divided into two phases: site preparation (Phase I) and construction of the building (Phase II).

Ten companies bid on Phase I, and the contract was awarded to Mideast as the lowest bidder. Appellant was allowed six months and roughly $500,000 to complete the job; the contract specified that both time and cost containment were of the essence.

Mideast began to have problems almost immediately after it began work. The parties to the contract disagree sharply about the source of the difficulties: Mideast says that its work was delayed because of bad weather, unreliable suppliers, and vague specifications; Turner claims that appellant failed to keep its equipment in working order and was guilty of poor on-site management. Regardless of the cause, completion of Phase I was delayed by five

months, and Mideast demanded more than twice the original contract price because of cost overruns.

Soon after the work on Phase I began, Turner requested bids on the series of contracts that made up Phase II. After one round of bidding was rejected because of "anomalies" in several of the proposals (including appellant's), Mideast once again proved to be the lowest bidder. On January 25 and 26, 1984, Turner held a meeting in Hawaii to discuss the bids. The meeting was attended by the NMI Contracting Officer (Lieutenant Governor Tenorio), the Hospital Project Manager (Antonio Tenorio), a DOI representative, and Thomas Ilich, a Turner employee. At this meeting, the group apparently discussed Mideast's Phase I performance and found it unacceptable. Turner therefore recommended to NMI that Mideast be found "non-responsive and non-responsible," and that its bid be rejected. NMI accepted this recommendation, and on March 7, 1984, the Phase II contracts were divided among three other companies.

Mideast filed suit less than two weeks later. The core of appellant's allegations was that DOI had released the grant money to NMI without making sure that the grantee had complied with the terms of Cir. A–102. The complaint stated that the contract awards had been irreparably marred by both potential and actual conflicts of interest among the decisionmakers, in violation of the OMB Circular. Mideast asked the court to find that it should have been awarded the Phase II contracts as the lowest responsive bidder, and to enjoin DOI from issuing funds in a way that would interfere with this award.

The conflict of interest allegations are complex, but only an outline is necessary here. Part of the Phase II work was awarded to a company called Asanuma Gumi, which was the parent of a newly created entity called Asanuma Marianas. A minority shareholder of Marianas was Construction Material and Supply, Inc. ("CMS"). After the Phase II contracts were awarded, CMS was given a $1.6 mil-

lion subcontract by Asanuma Gumi. CMS was thus an indirect beneficiary of the Phase II awards.

Appellant claims that there are close family and financial ties between CMS and those who decided to reject Mideast's bid in favor of others. CMS is owned by Joe Tenorio and his wife; Joe's brother is Antonio Tenorio, the Project Manager employed by NMI to oversee the hospital construction and to evaluate contractor performance. Before becoming the Project Manager, Antonio was president and general manager of CMS. Even though he resigned his positions before becoming the Project Manager, Antonio maintained a small financial interest in CMS.

In addition, Joe and Antonio's cousin, Lieutenant Governor Tenorio, was the NMI Contracting Officer, which meant that he was responsible for the ultimate selection of contractors. To round out the family portrait, Antonio's daughter was a special assistant to the Lieutenant Governor.

Appellant claims that the Tenorios' interest in CMS led to an unfounded decision that the company was non-responsive and non-responsible. Nevertheless, the district court granted DOI's summary judgment motion on October 23, 1984. The court began by rejecting DOI's threshold claims, holding without discussion that the court had jurisdiction and that Mideast had standing to bring its claims. *Mideast Systems and China Civil Construction Saipan Joint Venture v. Clark*, No. 84–1382, slip op. at 2 (D.D.C. Oct. 23, 1984); *see also Mideast Systems and China Civil Construction Saipan Joint Venture v. Clark*, No. 84–1382, slip op. at 3 (D.D.C. June 26, 1984) (in considering preliminary injunction motion, court found that plaintiff had standing). The district judge went on to say, however, that Mideast's claims failed as a matter of law. The court relied on this circuit's decision in *Delta Data Systems Corp. v. Webster*, 744 F.2d 197 (D.C. Cir.1984), which said:

> a court may not order the award of a contract unless it is clear that, but for the illegal behavior of the agency, the

contract would have been awarded to the party asking the court to order the award.

*Id.* at 204 (footnote omitted). The court concluded that based on the evidence of the poor Phase I performance, NMI reasonably concluded that Mideast was not a responsible bidder, and that therefore appellant could not show that it would have received the contract but for DOI's alleged illegal behavior. *Mideast Systems*, No. 84–1382 (Oct. 23 Decision) at 8.

We agree that Mideast cannot show that it was entitled to the contract even if DOI had enforced the terms of Cir. A–102. For this and other reasons detailed below, however, we hold that the trial court incorrectly reached the merits of the summary judgment motion. Even if the facts were as Mideast contends, this court could not grant the relief requested because there is no causal nexus between the alleged illegality and the denial of the contract. We therefore find that appellant does not have standing to pursue its claim.

## II.

Before a party has standing to have his case heard by a federal court, he must show that three criteria have been met. First, he must prove that he has suffered some actual or threatened injury. Second, the injury must be "fairly traceable" to the alleged illegal conduct (the "causation requirement"). Third, it must be likely that the injury will be redressed by the requested relief (the "redressability requirement"). *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 785, 70 L.Ed.2d 700 (1982); *see also Action Alliance of Senior Citizens of Greater Philadelphia v. Heckler*, 789 F.2d 931, 936, 939 (D.C.Cir.1986) (discussing prudential limitations on standing). Mideast failed to meet the second and third of these requirements.

The article III case or controversy limitation on a court's power requires that the plaintiff have suffered a "distinct and palpable" injury that gives him a personal stake in the outcome of the litigation. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). This injury must be more than conjectural or hypothetical; it cannot be a generalized grievance shared by all or a large class of citizens. *Id.* at 499, 95 S.Ct. at 2205. Mideast's claim easily meets that test. It contends that it was improperly denied the award of a contract, a traditional type of economic harm that is plainly sufficient to satisfy this prong of the standing requirement. *See Von Aulock v. Smith*, 720 F.2d 176, 180 (D.C.Cir.1983).

The other two criteria are more complex. Although they often overlap, the causation and redressability requirements are theoretically distinct. The first looks at the relationship between the alleged unlawful conduct and the injury; the second tests the relationship between the injury and the requested relief. *Wright*, 104 S.Ct. at 3326 n. 19; *see also Von Aulock*, 720 F.2d at 180–81. This distinction is important in cases where the required relief is so broad that it could alleviate the injury, but where there is still no causal nexus. In many cases, however, the two criteria are simply "two facets of a single causation requirement." C. Wright, *Law of Federal Courts* 68 n. 43 (4th ed. 1983), *quoted in Von Aulock*, 720 F.2d at 181. For present purposes, it is sufficient to treat the two elements as if they were identical. *Cf. Wright*, 104 S.Ct. at 3329 n. 24.

It is, of course, impossible to say with any precision how close the causal nexus must be to satisfy the standing requirement. The prevailing standard is that the injury must be "fairly traceable" to the alleged illegal act, and that relief must be "likely" to flow from a favorable judicial decision. *Wright*, 104 S.Ct. at 3325; *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). Although these standards are useful, they do not provide a talisman that automatically leads to a particular conclusion. The Su-

preme Court has cautioned against mechanically applying the standing rules in a rigid manner. *See Wright,* 104 S.Ct. at 3325. The case-law doctrine provides us with guidelines, but it is up to courts to determine whether a particular party is properly before the court.

The question presented, then, is whether Mideast's failure to obtain the Phase II contracts can fairly be traced to DOI's failure to enforce the terms of Cir. A–102. If appellant cannot show this nexus, or if it cannot show that it would be likely to receive the contract if we order DOI to comply with the Circular, then Mideast's claim must be dismissed. In considering appellant's arguments, we must accept its factual allegations as true. *Warth,* 422 U.S. at 501, 95 S.Ct. at 2206; *Von Aulock,* 720 F.2d at 177.

Mideast claims that there is a clear causal nexus between DOI's actions and the award of the contracts to other bidders. Appellant says that by virtue of DOI's failure to require NMI to have a written code of ethics, parties with obvious conflicts of interest were allowed to influence the decisionmaking process. Mideast's theory of impropriety is simple: Antonio Tenorio, the hospital Project Manager, had a financial interest in CMS, and Mideast was in competition with a CMS affiliate, Asanuma Gumi, for Phase II work. Appellant contends that it was not awarded the work because Antonio helped persuade Turner and NMI that appellant was a non-responsible bidder. Mideast believes that as a result of this improper influence, NMI's Lieutenant Governor—Antonio's cousin—gave part of the work to Asanuma Gumi, which then subcontracted to CMS.

Mideast says that absent the conflicts of interest, it would not have been found non-responsible, and thus would have been awarded the Phase II contracts as the lowest bidder. It thus believes that its injury can be directly traced to DOI's failure to require NMI to comply with Cir. A–102. Appellant asks this court, in essence, to order DOI to in turn order NMI to nullify the contracts with the current subcontractors, and to award the contracts to Mideast.

■ We cannot accept appellant's arguments, both because we find that the alleged causal relationship is too attenuated, and because in any event, the remedy would not alleviate the injury. Even accepting Mideast's allegations, the record is clear that the final decision on Phase II awards was made by NMI, not DOI. It was NMI that ultimately decided Mideast was non-responsive, thus causing the injury. DOI's alleged contribution to the harm is based on a chain of questionable inferences that concern how Turner, and hence how NMI, would have acted differently had the terms of the Circular applied. Assuming that these inferences are true, it is clear that DOI's involvement in the harm was remote at best. *See Warth,* 422 U.S. at 505, 95 S.Ct. at 2208 (indirectness of the injury may make it "substantially more difficult to meet the minimum requirements of Art. III").

■ Appellant's lack of standing also can be seen if causation is viewed in terms of the redressability requirement. Assuming *arguendo* that it was illegal for DOI not to compel NMI to institute a code of ethics, the proper remedy would be to order DOI to impose a code, and to order that Phase II be re-bid. The only result, however, would be to withdraw the contracts from the current grantees; the remedy would *not* result in an award to Mideast. That decision must be made by NMI, which is not a party before this court. We therefore cannot conclude that relief for appellant would be "likely" to flow from a favorable decision.

The trial court reached the same conclusion, except that the district judge analyzed the question on the merits rather than in terms of standing. Applying the reasoning in *Delta Data Systems, supra,* the district court found that there was an independent justification for finding Mideast non-responsive, namely its poor Phase I performance. We fully agree with the district court that the independent decision by NMI was enough to break the chain of causa-

tion; we only part company in concluding that this break divests appellant of standing.

■ Mideast does not directly rebut DOI's standing argument. Appellant only claims that if the facts are viewed in their most favorable light, it is *conceivable* that but for DOI's failure to impose a code of ethics, Mideast would have been awarded the Phase II contracts. But as the Supreme Court has made clear, the mere possibility that causation is present is not enough; the presence of an independent variable between either the harm and the relief or the harm and the conduct makes causation sufficiently tenuous that standing should be denied. In *Linda R.S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), for example, an unwed mother brought an action against a district attorney who failed to prosecute the father of plaintiff's child for non-support. Plaintiff asked the court to enjoin the D.A. from routinely refusing to pursue such cases. The Court dismissed for lack of standing, saying that if the requested relief were granted, the only result would be that the father would go to jail. "The prospect that prosecution will, at least in the future, result in payment of support," said the Court, "can, at best, be termed only speculative." *Id.* at 618, 93 S.Ct. at 1149. *See also Community for Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1202 (D.C. Cir.1986).

Similarly, in *Simon v. Eastern Kentucky Welfare Rights Organization, supra*, the Court was faced with a claim by low-income people who were protesting the tax-exempt status of certain hospitals that refused to treat patients who could not pay. Plaintiffs alleged that they were injured by the Internal Revenue Service's policy that "encouraged" hospitals to refuse to treat indigents. 426 U.S. at 33, 96 S.Ct. at 1921. Once again the Court found that plaintiffs lacked standing, because the injury was primarily caused by decisions made by the individual hospitals, not by the IRS. The Court rejected plaintiffs' contention that if the tax-exempt status were withdrawn (*i.e.*, if the requested relief were granted), some hospitals might change their policy toward indigents, and that there was therefore no break in the causation chain; the majority considered this argument "speculative at best." *Id.* at 43, 96 S.Ct. at 1926 (footnote omitted). *See also Wright, supra* (Court rejected as too speculative a claim that denial of tax-exempt status to single-race schools would cause change in admissions policies).

Thus it is not enough for Mideast to show that it *could* have been awarded the Phase II contracts if the project was re-bid. That decision could only be made by NMI, which means that appellant's relief depends on "independent action of some third party not before the court." *Eastern Kentucky*, 426 U.S. at 42, 96 S.Ct. at 1926; *see also Action Alliance, supra*, at 938. While it is arguable that NMI would have reached a different conclusion if the terms of Cir. A–102 had applied, we find that the link between DOI and the injury is at least as attenuated as the link in *Linda R.S.* and *Eastern Kentucky*. *Cf. Wright*, 104 S.Ct. at 3325 ("In many cases the standing question can be answered chiefly by comparing the allegations of the particular complaint to those made in prior standing cases."). Consequently, appellant's standing claim must fail.

CONCLUSION

Mideast has earnestly argued that it was unfairly deprived of valuable construction contracts; unfortunately, it blames the wrong actor for its troubles. On the record before us, appellant has not shown a causal nexus between its injury and DOI's conduct. The case is therefore remanded to the district court with orders to dismiss on the ground that Mideast does not have standing.

*It is so ordered.*