**MIDEAST SYSTEMS AND CHINA CIVIL CONSTRUCTION SAIPAN JOINT VENTURE, INC., Plaintiff,**

v.

**TURNER INTERNATIONAL (MICRONESIA) INC., Defendant.**

No. 85 Civ. 2422 (SWK).

United States District Court, S.D. New York.

May 22, 1987.

Cichanowicz, Callan, Carcich & Keane, New York City by Victor S. Cichanowicz, Lawrence V. Cichanowicz, for plaintiff.

Seyfarth, Shaw, Fairweather & Geraldson, New York City by Terri L. Combs, Robert J. Feinstein, Alice Baron, Michael Hirschfeld, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This action was commenced in New York State Supreme Court and was removed to this Court pursuant to 28 U.S.C. § 1441 on grounds of diversity jurisdiction under 28 U.S.C. § 1332(a). Plaintiff alleges interference with contract, negligence in conducting the bidding process, interference with business relations and fraudulent inducement to bid concerning certain construction contracts funded by a grant from the United States.

This action is presently before the Court on defendant's motions (1) to dismiss the third cause of action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that it fails to state a claim upon which relief can be granted, and (2) for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, dismissing the first, second and fourth causes of action. For the reasons set forth below, defendant's motions are granted in part and denied in part.

### FACTS

Plaintiff Mideast Systems and China Civil Construction Saipan Joint Venture ("Mideast") contests the rejection of its bids for construction contracts to build a hospital and health care facility (the "Project") on the Island of Saipan in the Commonwealth of the Northern Mariana Islands (the "Commonwealth"). Defendant Turner International (Micronesia) Inc. ("Turner") acted as construction manager of the Project pursuant to an agreement with the Commonwealth and acted as the Commonwealth's agent in administering the bidding procedures for the contracts for the Project. The bidding for the Project, which was funded by a grant from the United States to the Commonwealth, was subject to oversight by officials of the United States Department of the Interior (the "DOI").

The Commonwealth's plans and specifications for construction of the Project were divided into "bid packages". Turner solicited and reviewed the bids for the first bid package, the Commonwealth's plans and specifications for site preparation and excavation work on the Project ("Phase I"), and recommended to the Commonwealth that

Mideast was the lowest "responsible and responsive" bidder. The Commonwealth then awarded the Phase I contract to Mideast. The contract specified that both time and cost containment were of the essence.

Mideast began to have problems almost immediately after it began work. The parties to the contract disagree sharply about the source of the difficulties. Mideast claims that its work was delayed because of bad weather, unreliable suppliers, and vague specifications, while Turner claims that Mideast failed to keep its equipment in working order and was guilty of poor on-site management. Regardless of the cause, however, completion of Phase I was delayed by five months, and Mideast demanded more than twice the original contract price because of cost overruns.

The remaining bid packages for Phase II of the Project, which was the actual construction of the hospital and health care facility, were then advertised for bid. The invitation to bid expressly reserved the Commonwealth and Turner's right to reject all bids. Mideast was the apparent low bidder for both the individual bid packages and on combination options of those packages. Indeed, Mideast's bid for a combination of all of the bid packages was more than $5 million less than the next lowest bid of almost $15 million.

Mideast then sought to revise its bid upwards by approximately $2.5 million to correct for items it erroneously omitted in preparing its bid. This request was refused but Turner offered to allow Mideast to withdraw its bid to prevent possible forfeiture of its bid bond. Several days later, Mideast next submitted a letter to Turner in which it offered either to perform the work on Phase II for a revised price of just over $12 million, or to contract at its original bid price, provided that Turner would guarantee approximately $2.5 million in change orders during the life of the contract. Finally, Mideast provided that it would perform the contract at its original bid price with subsidization from the Peoples Republic of China.

Because Mideast's bid contained serious and material errors, and because of Mideast's improper attempts to negotiate its bid, Turner determined that Mideast's bid was non-responsive and non-responsible and recommended to the Commonwealth that Mideast's bid be rejected. Because there appeared to be a number of errors in many of the remaining bids, the Commonwealth rejected all the bids and rebid the Phase II bid packages.

Turner issued a second invitation for bids. Mideast again was the apparent low bidder. After interviewing Mideast, Turner preliminarily recommended that Mideast not receive any award on the ground that it was not responsible. The Commonwealth authorized Turner to interview the next lowest bidders. Following these interviews, Turner recommended, and the Commonwealth agreed, that Mideast be denied the Phase II contracts on the ground of non-responsibility. The Commonwealth then divided the Phase II contracts among three other companies.

Mideast requested a meeting to discuss the reasons for the bid rejection. Although a debriefing was scheduled, it never occurred because Mideast filed suit in the U.S. District Court for the Southern District of New York against the Secretary of the Interior, the Governor and Lieutenant Governor of the Commonwealth, and Turner. *Mideast Systems & China Civil Construction Saipan Joint Venture, Inc. v. Clark*, No. 84 Civ. 1875 (S.D.N.Y.1984). Mideast sought both declaratory and injunctive relief restraining the award of the Phase II contracts to any bidder other than Mideast. After the court denied Mideast's request for a temporary restraining order but before the court ruled on Mideast's application for a preliminary injunction, Mideast voluntarily dismissed the action.

Ten days later, Mideast commenced an action against the Secretary of the Interior in the United States District Court for the District of Columbia. The core of Mideast's allegations was that DOI had released the grant money to the Commonwealth without making sure that the grantee had complied with the terms of the

relevant Office of Management and Budget circular. The complaint stated that the contract awards had been irreparably marred by both potential and actual conflicts of interest among the decisionmakers, in violation of the OMB circular. Mideast asked the court to find that it should have been awarded the Phase II contracts as the lowest responsive bidder and to enjoin DOI from issuing funds in a way that would interfere with this award.

The court determined that, based on the evidence of poor Phase I performance, the Commonwealth reasonably had concluded that Mideast was not a responsible bidder, that therefore Mideast could not show that it would have received the contract but for DOI's alleged behavior, and that as a result Mideast's claims failed as a matter of law. *Mideast Systems and China Civil Construction Saipan Joint Venture v. Clark,* No. 84–1382 (D.D.C. Oct. 23, 1984), *vacated and remanded,* 792 F.2d 1172 (D.C.Cir. 1986).

On appeal, however, the United States Court of Appeals for the District of Columbia Circuit concluded that:

> Mideast has earnestly argued that it was unfairly deprived of valuable construction contracts; unfortunately, it blames the wrong actor for its troubles. On the record before us, appellant has not shown a causal nexus between its injury and DOI's conduct. The case is therefore remanded to the district court with orders to dismiss on the ground that Mideast does not have standing.

*Mideast Systems and China Civil Construction Saipan Joint Venture, Inc. v. Hodel,* 792 F.2d 1172, 1178 (D.C.Cir.1986).

Mideast filed this action against Turner subsequent to the District of Columbia district court's rejection of Mideast's claims in that forum. Mideast's first cause of action alleges that Turner interfered with its Phase I contract by hindering and delaying its performance on Phase I. Mideast's second cause of action alleges negligence in Turner's conduct of the bidding process. Mideast's third cause of action alleges that Turner tortiously interfered with its business relationship. In its fourth and final cause of action, Mideast claims that Turner fraudulently conducted the Phase II bidding process in that Turner had no intention of awarding the contracts to the lowest bidder but instead intended to and did award the contracts to parties already predetermined by Turner prior to the solicitation of bids.

## DISCUSSION

Turner moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, dismissing the first cause of action on the ground that the Mideast contract contained a "no-damages-for-delay" clause which bars the assertion of this claim and dismissing the second and fourth causes of action on the ground that these claims are barred by both res judicata and collateral estoppel as a result of the District of Columbia's district court's determination in *Mideast Systems and China Civil Construction Saipan Joint Venture v. Clark,* No. 84–1382 (D.D.C. Oct. 23, 1984), *vacated and remanded,* 792 F.2d 1172 (D.C.Cir.1986). Turner also moves to dismiss Mideast's third cause of action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that it fails to state a claim upon which relief can be granted.

### I. *The Motion for Summary Judgment*

The standards to be applied by a district court in deciding a motion for summary judgment have been clearly articulated in this Circuit. It is axiomatic that a motion for summary judgment lies only where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). In considering the motion, this Court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party. *Knight v. United States Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* — U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Speculation, conclusory allegations and mere denials are insufficient to raise genuine issues of material fact.

### A. The First Cause of Action

█ Mideast's first cause of action is "[t]hat as a result of defendant Turner's misrepresentations, negligence, interference, delay and hindrance of plaintiff's work under the contract, plaintiff was prevented from carrying on and finishing the same in a reasonable and proper manner and thereby incurred losses and damages in the amount calculated to be not less than $1,500,000.00." Amended Complaint ¶ 5. Turner argues that this claim is clearly a claim for delay damages which is governed by the express terms of Mideast's subcontract with Turner for Phase I.

The subcontract contains a no-damages-for-delay clause which provides in relevant part that:

Should the Subcontractor be delayed in the commencement, prosecution or completion of the Work by the act, omission, neglect or default of Turner or of anyone employed by Turner, or of any other contractor or subcontractor ... or by any other cause beyond the Subcontrac-

tor's control and not due to any fault, neglect, act or omission on its part, then the Subcontractor shall be entitled to an extension of time only, such extension to be for a period equivalent to the time lost by reason of any and all of the aforesaid causes, as determined by Turner.

Jennings Aff., Exh. B, p. 3.

Turner contends that the no-damages-for-delay clause is binding and bars Mideast's claim for damages.[1] The Court agrees. Under New York law, which governs the operation of Mideast's subcontract,

[s]uch a provision, not uncommon in construction contracts, especially when entered into at arm's length by sophisticated contracting parties, ... are enforceable.... But an exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances. Under announced public policy, it will not apply to exemption of willful or grossly negligent acts. More pointedly, an exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing. This can be explicit, as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith. Or, when, as in gross negligence, it betokens a reckless indifference to the rights of others, it may be implicit.

*Kalisch-Jarcho, Inc. v. City of New York,* 58 N.Y.2d 377, 383–85, 448 N.E.2d 413, 416–17, 461 N.Y.S.2d 746, 749–50 (1983) (footnotes and citations omitted).

Mideast, in its only claim related to Phase I of the Project, does not allege

---

1. Turner also contends that Mideast's first cause of action is barred by the assumption of obligations clause in its construction management agreement with the Commonwealth, the provisions of which are incorporated by reference into Mideast's subcontract with Turner for Phase I. That clause provides that:

In the event of termination of this Agreement as provided in this Article, the Owner shall assume and become liable for obligations and unsettled claims that the CM [Turner] has

previously undertaken or incurred in good faith in connection with the work.
Jennings Aff., Exh. A, Article 14.3, p. 24.
Although the Court need not reach this issue, the Court does not find this argument persuasive because the termination provided for in Article 14 is for breach of contract, and Turner does not demonstrate that its contract with the Commonwealth was terminated for breach. As a result, Article 14 would not apply to the instant case.

either gross negligence or intentional wrongdoing by Turner. Nor, indeed, does Mideast rebut that summary judgment is appropriate where, as here, there is no genuine issue of material fact in dispute. As a result, the Court finds that the operation of the no-damages-for-delay clause bars Mideast's first cause of action for damages.

Accordingly, Turner's motion for summary judgment in its favor on Mideast's first cause of action is granted pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### B. *The Second and Fourth Causes of Action*

■ Mideast argues that it must be granted summary judgment on its second and fourth causes of action because these issues were decided adversely to Mideast by the District of Columbia district court and the principles of res judicata and collateral estoppel now operate to bar relitigation of these issues and claims in this action.

Since the filing of Turner's motion, however, the District of Columbia District Court's decision has been vacated and remanded by the United States Court of Appeals for the District of Columbia with specific directions to dismiss the claims in their entirety on the ground that Mideast lacked standing to pursue its claims. *Mideast Systems and China Civil Construction Saipan Joint Venture, Inc.*, 792 F.2d at 1178. In order for the doctrines of res judicata or collateral estoppel to attach, the claim or issue must have been determined by a court of competent jurisdiction, *see, e.g., Southern Pacific Railroad Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27–28, 42 L.Ed. 355 (1897), and where, as here, the judgment has been vacated for lack of standing, it is settled that neither res judicata nor collateral estoppel can apply.

Accordingly, Turner's motion for summary judgment in its favor on Mideast's second and fourth causes of action is denied.

### II. *The Motion to Dismiss*

■ Turner moves to dismiss Mideast's third cause of action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that it fails to state a claim upon which relief can be granted. The third cause of action alleges that Turner "interfered with the business relationship of plaintiff by communicating with China Civil Engineering Construction Corporation without the knowledge or consent of Mideast Systems Ltd. and by various threats and other acts of indiscretion seeking to disrupt, dissolve and destroy the joint venture." Amended Complaint ¶ 9.

Mideast allegedly is a corporation, organized under New York law, that is jointly owned by Mideast Systems Ltd. and the China Civil Engineering Construction Corporation and which was formed to bid upon and construct the Project. Turner argues that plaintiff, which is the joint venture, is impermissibly claiming damages for Turner's interference with the business relations between the joint venturers. Turner then points out that, if a claim exists at all, it belongs to Mideast Systems Ltd., one of the two joint venturers which formed Mideast and which is not a party to this action.

The tort of interference with business relations is established upon proof of "the defendant's interference with business relations existing between the plaintiff and the third party, *either* with the sole purpose of harming the plaintiff *or* by means that are 'dishonest, unfair or in any other way improper.'" *Martin Ice Cream Co. v. Chipwich, Inc.*, 554 F.Supp. 933, 945 (S.D.N.Y. 1983) (quoting *Robbins v. Ogden Corp.*, 490 F.Supp. 801, 811 (S.D.N.Y.1980) (emphasis in original)). *See also Bunch v. Artec International Corp.* 559 F.Supp. 961, 969 (S.D.N.Y.1983).

The only business relationship alleged in the amended complaint is between Mideast and Turner. Furthermore, Mideast is a joint venture including the entity Turner allegedly communicated with. As a result, Mideast's third cause of action is fatally defective because it has not alleged Turner's interference with business relations ex-

isting between Mideast and a third party. Rather, it alleges Turner's interference with the business relations between the joint venturers.

Accordingly, Mideast's third cause of action is dismissed, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.

### III. *Request to Amend the Amended Complaint*

Mideast requests leave to amend its amended complaint in order to add Mideast Systems Ltd. as a party plaintiff to this action and to cure any deficiencies in its third cause of action.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint "shall be freely given when justice so requires." The Supreme Court has provided that:

> this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure the deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant leave without any justifying reason appearing for the denial is not an exercise of discretion, it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1972) (citation omitted).

Turner argues that Mideast has already had one opportunity to amend its complaint and, having failed to set forth any legal basis whatsoever for assertion of this claim in its answering papers, its request should be denied.

The Court disagrees. In the interest of justice, the Court finds no apparent reason why Mideast should not have one last chance to amend its third cause of action in order to state a valid claim upon which relief may be granted.

Accordingly, Mideast's request to amend its third cause of action in order to state a valid claim against Turner is granted. Mideast has two weeks from the date of the entry of this Memorandum Opinion and Order to file its second amended complaint.

### CONCLUSIONS

For the reasons set forth above, Turner's motion for summary judgment in its favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on Mideast's first cause of action is granted; Turner's motion for summary judgment as to the second and fourth causes of action is denied; Turner's motion to dismiss Mideast's third cause of action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted; and Mideast's request to amend the third cause of action in its amended complaint is granted.

SO ORDERED.