**Gary H. PALM, Plaintiff,**

v.

**Roderick R. PAIGE, Secretary of Education, Defendant.**

**CIV. A. No. 01–00439(ESH).**

United States District Court, District of Columbia.

Sept. 4, 2001.

Gary H. Palm, Chicago, IL, pro se.

Carolyn A. McKee, Sheila Mae Lieber, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiff Gary Palm, a former clinical professor of law and American Bar Association ("ABA") member, has brought this *pro se* suit seeking to invalidate certain regulations promulgated by defendant, the Secretary of Education, pursuant to the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1070 *et seq.*, and in particular to invalidate their application to the ABA. Defendant has moved to dismiss pursuant to Fed.R.Civ.P. 12(b), arguing that plaintiff lacks standing to bring this action. For the reasons set forth more fully below, the Court agrees and therefore will dismiss the complaint with prejudice.

## BACKGROUND

Since 1952, the Council of the ABA Section of Legal Education and Admissions to the Bar ("the Council") has periodically applied for and received recognition by the Secretary as a "nationally recognized accrediting agency" under § 496 of the HEA, 20 U.S.C. § 1099b. In that capacity, the Council accredits institutions of higher learning, specifically independent freestanding law schools that are not affiliated with a larger university. Traditionally, the Council's accrediting standards and decisions had been subject to final review by the ABA's House of Delegates, the body of ABA members that sets policy for the ABA and supervises and directs the actions of ABA sections and committees. In 1992, Congress amended the HEA to require that certain accrediting agencies seeking recognition by the Secretary either be "separate and independent" of any affiliated trade or professional membership organization, or qualify for a waiver of the separate and independent requirement un-

der criteria to be prescribed by the Secretary. 20 U.S.C. § 1099b(a)(3), (b). In 1997, when the Council first came before the Secretary for a renewal of its recognition under the Act as amended in 1992, the Secretary informed it that under the separate and independent requirement, the Council could not retain its recognition unless it had final decisionmaking authority over accrediting decisions and standards, which at that time remained with the House of Delegates. Therefore, the ABA and the Council devised a restructuring plan that would vest final decisionmaking authority in the Council. Under the new structure, Council decisions regarding accreditation of a particular institution would be subject to up to two advisory appeals to the House of Delegates, which has the authority to remand to the Council for further consideration, with ultimate authority vested in the Council to make the final determination at the conclusion of this process. *See United States v. American Bar Assoc.*, 135 F.Supp.2d 28, 30 (D.D.C.2001).

The implementation of this new structure required modification of an existing Consent Decree entered into between the ABA and the United States Department of Justice, Antitrust Division. The modification to that Consent Decree was approved by The Honorable Royce C. Lamberth as "advancing the public interest." *Id.* at 32. Plaintiff filed comments in that matter, raising objections that the regulations requiring the change to the accreditation structure and procedure were inconsistent with the HEA. Compl. ¶ 21. Plaintiff has now brought this suit, claiming that the regulations have been applied contrary to the HEA and in excess of the Secretary's authority under the HEA.[1] The essence of

---

1. Although plaintiff does not specify in his complaint, it must be presumed that he is attempting to bring this suit under the Administrative Procedures Act, 5 U.S.C. § 701 *et*

plaintiff's complaint is that he is dissatisfied with the fact that the House of Delegates no longer has the authority to adopt accreditation standards and to make final accreditation decisions. *See* Compl. ¶¶ 3–5, 8, 10–11.

## I. STANDARD OF REVIEW

The Court grants a motion to dismiss only when the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In reaching this determination, the "complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979) (citation and internal quotation marks omitted). "However, the court need not accept inferences drawn by plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994).[2]

## II. STANDING

■ To meet the "irreducible constitutional minimum" requirements for Article III standing, a plaintiff bears the burden of showing that: (1) he has suffered an injury which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the alleged injury and conduct that is fairly traceable to the defendant, and not the result of the independent action of some third party not before the court; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Because the elements of standing are "not mere pleading requirements, but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561, 112 S.Ct. 2130. If "plaintiffs' standing does not adequately appear from all materials of record, the complaint must be dismissed." *Warth v. Seldin,* 422 U.S. 490, 502, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

■ In this case, the complaint fails to allege any of the three elements required to establish standing. The complaint describes plaintiff as a member of the ABA, a former professor at an ABA accredited law school, a former member of the ABA Accreditation Committee, a former member of the Council, and a former Chair of the Illinois State Bar Association's Committee on Legal Education, Admissions, and Competence, which proposed revisions to the ABA accreditation standards that were not adopted by the Council. Compl. ¶¶ 1–4. The complaint also details plaintiff's general dissatisfaction with the validity of the regulations, their inconsistency with the HEA, the Secretary's authority to impose their requirements, and the manner in which the ABA adopted the changes to their accreditation process. The complaint is silent as to injury in fact, causa-

*seq.,* since there is no private right of action to sue under the HEA.

2. Plaintiff has alleged additional facts, not contained in the complaint, in his opposition to defendant's motion which, for the purposes of this motion, the Court will assume are true. However, as discussed above, the Court will not credit inferences which are not supported by the facts alleged in the complaint or in plaintiff's opposition.

tion, and redressability. Such general grievances as those set out in the complaint are insufficient to establish plaintiff's standing to bring this lawsuit. *See Lujan*, 504 U.S. at 573–74, 112 S.Ct. 2130 ("We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.").

█ That the ABA may have standing as an institution to allege injury caused by the Secretary's regulations does not mean that a lone member, such as plaintiff, has the authority to allege institutional injury on its behalf. *See, e.g., Raines v. Byrd*, 521 U.S. 811, 829, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) ("In sum, appellees [individual members of Congress] have alleged no injury to themselves as individuals, the institutional injury they allege is wholly abstract and widely dispersed, and their attempt to litigate this dispute at this time and in this form is contrary to historical experience. We attach some importance to the fact that appellees have not been authorized to represent their respective Houses of Congress in this action, and indeed both Houses actively oppose their suit.") (internal citations omitted); *Lujan*, 504 U.S. at 560 n. 1, 112 S.Ct. 2130 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 544, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) ("[Appellant's] status as a School Board member does not permit him to 'step into the shoes of the Board' and invoke its right to appeal. In this case, [appellant] was apparently the lone dissenter in a decision by the other eight members of the School Board to forgo an appeal. Generally speaking, members of collegial bodies do not have standing to perfect an appeal the body itself has declined to take."). Indeed, plaintiff acknowledges that he has not brought this suit on behalf of the ABA or the Section on Legal Education, but on his own behalf. (Opp. at 15–16.)

█ Plaintiff seeks to remedy the glaring insufficiency of his complaint by establishing the elements of standing in his arguments in opposition to defendant's motion to dismiss. Plaintiff must establish an injury that he has suffered as a result of defendant's application of the regulations to the ABA. *See Warth*, 422 U.S. at 499, 95 S.Ct. 2197 ("A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action.' ") (citation omitted). Plaintiff argues in his opposition that his voting rights as a member of the ABA have been diluted by the regulations. The only voting right plaintiff specifically refers to is that as a member of the ABA Section on Legal Education, he votes on electing members of the Council. (Opp. at 7.) Plaintiff claims that because of the "group membership program," which he alleges allows law schools to pay for ABA and Section membership for faculty and administrators, membership in the Section which elects Council members is composed of 80% law school paid members and 20% non-law school paid members. (*Id.*) As an initial matter, plaintiff does not explain how the "separate and independent" regulations that he challenges have anything to do with the "group membership program," or how applying the separate and independent requirement to the ABA accreditation process impacts or dilutes his ability as a Section member to vote for Council members. That plaintiff does not like the composition of ABA Section members who

elect Council members is not an injury that flows in any way from the Secretary's application of the separate and independent requirement, nor would it be redressed by this Court's invalidation of those regulations. Moreover, plaintiff does not explain how his voting rights have been diluted by the regulations or how a favorable decision in this suit would restore them.

Plaintiff's conclusory allegations that his voting rights have been diluted seem to be premised on his assumption that the Council will not act in a manner consistent with his goals and proposals with respect to accreditation standards and that the House of Delegates might act differently.[3] This and other purported injuries that plaintiff alleges do not flow from the allegedly invalid regulations, but from actions that plaintiff speculates that the Council will take with respect to accreditation matters that he also speculates would not be taken if the House of Delegates retained its role in ABA accreditation matters. Plaintiff's alleged injury is that he anticipates some Council actions will be contrary to what plaintiff believes is the proper direction for accreditation standards and the future of legal education. Plaintiff has alleged nothing more than a speculative possibility that the Council will take action, shielded from review by the House of Delegates, with which he disagrees. Such injuries are "conjectural or hypothetical," not "actual or imminent." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (citation and internal quotation marks omitted). As the Supreme Court noted in

*Diamond v. Charles*, 476 U.S. 54, 66–67, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986), "[a]lthough [plaintiff's] allegation may be cloaked in the nomenclature of a special professional interest, it is simply the expression of a desire that the [law] as written be obeyed. Article III requires more than a desire to vindicate value interests. It requires an 'injury in fact' that distinguishes 'a person with a direct stake in the outcome of a litigation-even though small-from a person with a mere interest in the problem.' " Here, plaintiff "has an interest, but no direct stake" in the process by which the ABA makes accreditation decisions. *Id.* at 67, 106 S.Ct. 1697. Moreover, "[w]here there is no current injury, and a party relies wholly on the threat of future injury, the fact that the party (and the court) can imagine circumstances in which [the party] could be affected by the agency's action is not enough." *Northwest Airlines v. FAA*, 795 F.2d 195, 201 (D.C.Cir.1986) (citation and internal quotation marks omitted). "The injury requirement will not be satisfied simply because a chain of events can be hypothesized in which the action challenged eventually leads to actual injury." *Id.*

Even if such speculation were sufficient to establish injury, which it is not, the Council's substantive decisions on matters of accreditation do not flow from the Secretary's requirement that the Council be separate and independent from the ABA. "A court may act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent

---

**3.** Similarly, plaintiff also argues that he is "active in other organizations which regularly address accreditation matters with the ABA," such as the Clinical Legal Education Association ("CLEA") and the Legal Education, Admissions, and Competence Committee of the Illinois State Bar Association, and that he participates in the process of proposing and

developing accreditation standards with these organizations. (Opp. at 8, 11.) Plaintiff alleges that the effectiveness of these organizations "will be greatly diminished" and their bargaining strength "greatly reduced" (Opp. at 9) because they can no longer achieve their goals by obtaining favorable action on accreditation matters from the House of Delegates.

action of some third party not before the court." *Northwest Airlines*, 795 F.2d at 203–04 (citation and internal quotation marks omitted). *See also Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (there must be a causal connection between the alleged injury and conduct that is fairly traceable to the defendant, and not the result of the independent action of some third party not before the court); *Mideast Systems and China Civil Construction Saipan Joint Venture, Inc. v. Hodel*, 792 F.2d 1172, 1177 (D.C.Cir.1986) ("the presence of an independent variable between either the harm and the relief or the harm and the conduct makes causation sufficiently tenuous that standing should be denied"). "When the impact of the government action challenged is that indirect, it will generally be very difficult to establish the causative relationship necessary to demonstrate article III standing." *Northwest Airlines*, 795 F.2d at 204.

Nor would the Council's ability to make whatever accreditation decisions it chooses be eliminated if this Court were to invalidate the regulations at issue. The accreditation procedure is now mandated by the Consent Decree in *United States v. American Bar Assoc.*, 135 F.Supp.2d 28, and plaintiff has no standing to seek modification of that Consent Decree to alter that procedure. That the ABA and/or the Department of Justice would be free to seek such relief does not establish that it is "likely as opposed to merely speculative" that plaintiff's injury would be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130 (citation and internal quotation marks omitted). "Courts have been loath to find standing when redress depends largely on policy decisions yet to be made by" third parties or government officials, "because the question of whether [plaintiff's] claims of . . . injury would be redressed by a favorable decision in such a case depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *U.S. Ecology, Inc. v. Dep't of the Interior*, 231 F.3d 20, 24 (D.C.Cir.2000) (citation and internal quotation marks omitted). "When redress depends on the cooperation of a third party, 'it becomes the burden of the [plaintiff] to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury.'" *Id.* at 24–25 (quoting *Lujan*, 504 U.S. at 562, 112 S.Ct. 2130).[4] Finally, even if the role of the House of Delegates were restored, it is wholly speculative that it would act in a manner consistent with plaintiff's proposals and opinions as to what accreditation decisions should be made and what accreditation standards should be adopted.[5]

---

4. For the same reasons, plaintiff's argument that he is relying on a particular ABA accreditation standard in his wrongful termination action against the University of Chicago Law School also fails to establish his standing to bring this suit. Plaintiff alleges that his position as a clinical professor was not renewed and that Accreditation Standard 405(c) requires that clinical faculty members have a form of security in their positions reasonably similar to tenure. Plaintiff alleges that this standard has been under review since the role of the House of Delegates in developing accreditation standards was eliminated. Again, the fact that the Council is considering action with which he disagrees and that he apparently believes the House of Delegates would not take does not constitute an injury, caused by the regulations at issue, that would be redressed by the Court in this case.

5. Plaintiff's argument that under Illinois law, a member of a not-for-profit organization may sue that organization to enforce the organization's constitutional provisions in no way provides him with standing to sue the Department of Education regarding its regulations. At best, the analogy arguably supports his standing under that law to sue one of the organizations to which he belongs—none of

**33**

## CONCLUSION

For the foregoing reasons, plaintiff lacks standing to bring this lawsuit and it will be dismissed with prejudice. A separate order accompanies this opinion.

## *ORDER*

For the reasons set forth in the accompanying memorandum, defendant's motion to dismiss [8–1] is **GRANTED.**

Plaintiff's complaint shall be **DISMISSED WITH PREJUDICE.**

which are defendants in this suit. It has no bearing on plaintiff's standing to sue a federal agency alleging that regulations it promulgat- ed are inconsistent with a federal statute and beyond the scope of the agency's authority.