CUBIC TRANSPORTATION SYSTEMS, INC.,
Plaintiffs,

v.

MINETA, et al., Defendants,

and

Scheidt & Bauchman USA, Inc.,
Defendant–Intervenor.

No. 03–1023 (RJL).

United States District Court,
District of Columbia.

Dec. 29, 2004.

Clifford J. Zatz, Tobias Eli Zimmerman, Akin, Gump, Strauss, Hauer & Feld, LLP, Washington, DC, for Plaintiff.

Lisa Sheri Goldfluss, United States Attorney's Office, Eric James Marcotte, Winston & Strawn LLP, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Cubic Transportation Systems, Inc. ("Cubic") seeks declaratory relief against two government agents in their official capacity, Norman Mineta, Secretary of the U.S. Department of Transportation and Jennifer Dorn, Administrator of the Federal Transit Administration ("FTA"). Cubic challenges the FTA's decision that defendant-intervenor's, Scheidt & Bauchman ("S & B"),[1] offer for an automated fare collection system complied with the FTA's Buy America regulations. Both defendants filed a Motion to Dismiss on the grounds that the plaintiff lacks standing to

challenge the FTA's decision. Upon due consideration of the parties' motions, the Court agrees and GRANTS the motions to dismiss.

## BACKGROUND

In October 2001, the Massachusetts Bay Transportation Authority ("MBTA") issued a Request for Proposal for an Automated Fare Collection System ("RFP") to be used in the MBTA's subway, bus, and commuter rail system. Compl. ¶ 15. Because the MBTA project would receive FTA funding, each bidder was required to certify whether or not they were able to comply with the Buy America requirements. Id. ¶ 16; Def. Mot. to Dismiss at 5. Although the MBTA received four bids, only two submissions complied with the RFP: Cubic's and S & B's. Compl. ¶ 17. MBTA awarded the contract to S & B based on price. Id.; Def. Mot. to Dismiss at 7.

In July 2002, Cubic petitioned the FTA to investigate S & B's compliance with the Buy America regulations. Compl. ¶ 18. Under the regulations, a successful bidder who certifies compliance with the Buy America regulations is presumed to be compliant. 49 C.F.R. § 661.15(a). If, however, the presumption is overcome by information presented to FTA, the FTA can initiate an investigation. Id. § 661.15(b). In August 2002, FTA notified MBTA that S & B's presumption was overcome by Cubic's petition and that it was investigating whether S & B's offer complied with the Buy America requirements. Compl. ¶ 20. S & B and Cubic submitted documents and responses to the FTA during the investigation. Def. Mot. to Dismiss at 8–9. And, on November 14, 2002, FTA notified MBTA that it had completed its investigation and found that S & B's

---

1. On October 9, 2003, the Court granted S & B's Motion to Intervene as a defendant in this matter. For the ease of this discussion, the Court will refer to the defendants and the defendant-intervenor collectively as "the defendants."

offer complied with the Buy America requirements. Compl. ¶ 21. On May 9, 2003, plaintiffs brought this suit seeking declaratory judgment.

## STANDARD OF REVIEW

The issue of standing is a threshold question in every federal case. Its purpose, in the final analysis, is to determine whether the case is justiciable. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The inquiry to be made by the Court is "whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Id.* at 498–99, 95 S.Ct. 2197 (internal quotation marks omitted). This inquiry has both constitutional and prudential limitations on the Court's jurisdiction. *Id.* at 498, 95 S.Ct. 2197.

When reviewing a motion to dismiss for lack of standing, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Id.* at 501, 95 S.Ct. 2197. Where a motion to dismiss, however, presents a dispute over the factual basis of the Court's jurisdiction, the Court "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Rep. of Angola,* 216 F.3d 36, 40 (D.C.Cir.2000); *In re Swine Flu Immunization Prods. Liability Litig.,* 880 F.2d 1439, 1442–43 (D.C.Cir.1989). If, after the considering the record before the Court, "the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." *Warth,* 422 U.S. at 502, 95 S.Ct. 2197.

## ANALYSIS

■ A plaintiff challenging the legality of government action bears the burden of establishing that he has standing to challenge the action. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To establish "the irreducible constitutional minimum of standing," the plaintiff must demonstrate three elements: (1) an injury-in-fact, (2) that the injury is fairly traceable to the challenged conduct, and (3) that the injury can be redressed by a favorable decision by the Court. *Id.* at 560–61, 112 S.Ct. 2130. If the plaintiff was not the object of the government's action, however, it is more difficult to establish that he has standing. *Id.* at 562, 112 S.Ct. 2130. For the following reasons, the Court finds that the plaintiff has failed to satisfy its burden of establishing sufficient facts to demonstrate standing based on either an actual or an imminent injury-in-fact. Accordingly, the defendants' motions to dismiss are granted.

### I. Actual Injury

■ Cubic's claim to an actual injury is based on a premise: as a result of S & B's non-compliance, FTA would have to award the contract to Cubic. Cubic alleges as much in its complaint when it states: "FTA would have been compelled to find that S & B's offer was not Buy America-compliant, entitling Cubic, the only other offeror that met all the requirements of the RFP, to the award of the MBTA contract." Compl. ¶ 39. This assumption, however, is faulty because it is based on a misreading of the regulations. Nothing in the regulations provides that Cubic, as the second low bidder, would necessarily have been entitled to the contract if S & B was non-compliant.[2] Indeed, on this point, the

---

2. In *Mideast Systems,* the D.C. Circuit determined that an unsuccessful bidder did not have standing to sue the Secretary of the

Department of the Interior, who granted the construction funds to build a hospital on one of the Northern Mariana Islands, for failure

regulations merely provide that "[i]f a [successful] bidder does not take the necessary steps [to become compliant] ... it is in breach of contract if a contract has been awarded." 49 C.F.R. § 661.17.

■ Cubic additionally contends in its opposition to the defendants' motions to dismiss that it suffered: an actual injury in the form of a competitive disadvantage in the procurement process; a denial of Cubic's right to a legally valid procurement process; and a hindrance to Cubic's ability to compete on a level playing field. Pl. Opp. at 2–7, 11. Unfortunately for the plaintiff, however, it does not demonstrate that this supposed injury-in-fact was "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (internal citations and quotation marks omitted). The record before this Court lacks any facts or information to establish either a competitive disadvantage in the procurement process, an invalid procurement process, or an inability on Cubic's part to compete during the procurement process.

■ Even if Cubic had suffered a competitive disadvantage during the procurement process, it would also have to demonstrate "a causal connection between the injury and the conduct complained of."[3] *Id.* at 560, 112 S.Ct. 2130. Cubic's allega-

tion that FTA's misinterpretations of the Buy America regulations caused Cubic competitive disadvantage in the procurement process, Pl. Opp. at 11, however, fails this test. FTA's involvement in this matter occurred only after the competitive procurement process was complete. Any injuries alleged by Cubic to have occurred during the competitive process are therefore not fairly traceable to FTA.

Accordingly, the Court finds that Cubic has failed to allege the necessary injury-in-fact to obtain standing to challenge the FTA's decision.

## II.  Imminent Injury

■ Finally, Cubic's allegation that it will suffer imminent injury-in-fact because of FTA's flawed interpretations of the Buy America statute and regulations is similarly unavailing. Beyond stating that Cubic "regularly bids on public transportation projects that are subject to FTA's Buy America regulations," Compl. ¶ 40, Cubic offers no specific information about harm it will suffer in the future. The Supreme Court has held that " 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564, 112 S.Ct. 2130 (citation omitted). As a result, Cubic has failed to

---

to follow the applicable regulations in administering the grant. *Mideast Systems & China Civil Construction Saipan Joint Venture, Inc. v. Hodel*, 792 F.2d 1172, 1174 (D.C.Cir.1986). The D.C. Circuit found that the plaintiff did not have standing because the causal nexus was too attenuated where "the record [was] clear that the final decision on [the contract]" was made by the contracting party rather than the agency providing funding for the contracted project and a "withdraw [al][of] the contracts from the current grantees...would *not* result in an award to [the plaintiff]." *Id.* at 1177. Likewise, in this

action, FTA did not make the final decision awarding the MBTA contract to S & B, and a finding by FTA that S & B was not compliant with the Buy America regulations would not have necessarily resulted in awarding the contract to Cubic.

3.  In *Lujan*, the Supreme Court held that "the injury has to be 'fairly...trace[able] to the challenged action of the defendant, and not...th[e] result [of] the independent action of some third party not before the court.' " *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (citation omitted).

allege sufficient facts to establish standing based on an imminent injury-in-fact.[4]

## ORDER

For the reasons set forth above, it is this 28th day of December, 2004 hereby

**ORDERED** that the defendants' Motion to Dismiss [# 14] is **GRANTED**, and it is further

**ORDERED** that the defendant-intervenor's Motion to Dismiss [# 24] is **GRANTED.**

**SO ORDERED.**

## FINAL JUDGMENT

For the reasons set forth in the Memorandum Opinion and Order entered this 28th day of December, 2004, it is hereby

**ORDERED** that the defendant's Motion to Dismiss is GRANTED and the defendant-intervenor's Motion to Dismiss is GRANTED, and it is further

**ORDERED** that judgment is entered in favor of the defendants and defendant-intervenor, and the case be dismissed with prejudice.

**SO ORDERED.**

---

4. Because the Court finds that Cubic fails to satisfy constitutional standing requirements, it does not need to address the prudential standing arguments raised by the plaintiffs. *City of Orrville, Ohio v. FERC,* 147 F.3d 979, 987 n. 10 (D.C.Cir.1998).